# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>OMAR RODRIGUEZ LOPEZ,<br><br>Defendant. | 8:18CR127<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Findings and Recommendation (F&R), ECF No. 78, issued by Magistrate Judge Susan M. Bazis. The Magistrate Judge recommended that the Motion to Suppress filed by the Defendant Omar Rodriguez Lopez, ECF No. 58, be denied. Defendant filed an Objection to the F&R, ECF No. 79, as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government responded to the Objection by a "Notice of Adoption of Magistrate Judge's Findings and Recommendation." ECF No. 80. For the reasons set forth below, the F&R will be adopted, and the Motion to Suppress will be denied.

## BACKGROUND

Defendant is charged with conspiracy to possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine. Indictment, ECF No. 21. Defendant seeks to suppress any evidence obtained by law enforcement during a traffic stop on April 26, 2018. Defendant does not directly object to the Magistrate Judge's factual findings. Having reviewed the record, the Court adopts those findings and provides the following by way of summary:

On April 26, 2018, Investigator Jarod Brabec of the Lancaster County Sheriff's Office was working on Interstate 80 performing traffic enforcement. Brabec was a member of the County's interdiction team, that pursued individuals involved in criminal activity and intercepted such persons while enforcing traffic laws. While observing traffic on Interstate 80, Brabec received information from Special Agent Weimer of Homeland Security that there was a vehicle traveling eastbound on Interstate 80 that was involved in a large-scale methamphetamine distribution operation based out of Omaha. Weimer's notice was based on reliable information from a confidential informant. Brabec relayed the information to Sergeant Mike Vance, a K-9 handler with the Seward County Sheriff's Office.

At 9:45 a.m., Vance observed the vehicle, driven by Defendant, travelling eastbound on Interstate 80 toward Brabec's location. Vance followed the vehicle to Brabec's location. Brabec testified that once the vehicle reached his location, the plan was to look for a traffic violation to support a stop. Brabec testified that when the Defendant's vehicle reached Brabec's location, it was following closely behind another vehicle. Using a stopwatch, Brabec measured 0.8 seconds between the rear bumper of the first vehicle and the front bumper of Defendant's vehicle. Brabec, using the "three-second rule", determined that Defendant was following too closely and stopped Defendant's vehicle.

Brabec testified that Defendant's vehicle had a "lived-in" look and that Defendant was overly nervous throughout the stop. After initiating the stop, Brabec escorted Defendant to Brabec's cruiser so he could issue Defendant a warning ticket and perform a records check. Defendant did not provide a valid driver's license but provided a Mexican

2

identification card. Brabec asked Defendant about his travel itinerary. At first, Defendant told Brabec that he was traveling from Aurora, Colorado, because he was going to see his friend who was deported, but later stated that he had gone to Colorado because his friend had already been deported.

Defendant could not provide a permanent address of residence, though he reviewed a piece of paper from his wallet that had two addresses written on it. Brabec testified that he could not complete a records check without Defendant's address. Brabec also testified that communication barriers due to language prolonged the routine tasks associated with the traffic stop.

As Brabec was attempting to get Defendant's information to perform a records check, Vance ran his K-9 around Defendant's vehicle. At that point, Brabec had not provided *Miranda* warnings. Approximately ten minutes into the stop, the K-9 alerted to the presence of narcotics in the vehicle. Vance then returned to Brabec's cruiser and asked Defendant if there were any narcotics in the vehicle. Defendant admitted that there was a small amount of cocaine.

Brabec then asked for Defendant's consent to search the vehicle, even though Brabec believed that, due to the K-9 alert, he did not need Defendant's consent. Brabec used Google translate to ask for consent in both English and Spanish. Brabec obtained consent and investigators searched Defendant's vehicle. Investigators found a vacuum-sealed container with tape. Soon thereafter, Defendant was given his Miranda warnings and Defendant invoked his rights to remain silent and to an attorney.

3

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a), the Court shall make a *de novo* review of the portions of the Magistrate's Findings and Recommendation to which objections have been made. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings and recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

**DISCUSSION**

Defendant asserts that the evidence obtained from the stop should be suppressed because he did not violate any traffic laws; the traffic stop was unreasonably prolonged; and his *Miranda* rights were violated when he was asked questions by officers during the traffic stop. Though not asserted in his Motion, Defendant argues in his brief and in his Objection that he did not consent to a search of his vehicle and officers did not request consent for the K-9 sniff of the vehicle. The Magistrate Judge rejected each of Defendant's arguments. Defendant broadly objects to the Magistrate Judge's conclusions but did not submit additional arguments. Instead, Defendant relies on his previously filed brief, ECF No. 59, and arguments at the evidentiary hearing.

The Court has reviewed the record, including the evidence received at the hearing and Defendant's previous arguments, and concludes that he has not identified a Fourth Amendment violation. The Fourth Amendment guarantees that people should be "secure in their persons, houses, papers, and effects against unreasonable searches and seizures, and no Warrants shall issue, but upon probable cause . . ." U.S. Const., amend. IV. The evidence supports the Magistrate Judge's determination that the traffic stop was justified at its inception and law enforcement had probable cause to search Defendant's

vehicle. Accordingly, for the reasons stated below, the Court will adopt the Magistrate Judge's F&R.

**I. Probable Cause to Stop Defendant's Vehicle**

"A traffic violation, no matter how minor, creates probable cause for a law enforcement officer to stop [a] vehicle." *United States v. Lopez*, 564 F.3d 1001, 1003 (8th Cir. 2009). "[I]f an officer has reasonable suspicion or probable cause to stop for a traffic violation, 'any ulterior motivation on the officer's part is irrelevant.'" *United States v. McLemore*, 887 F.3d 861, 864 (8th Cir. 2018) (quoting *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 2107 (2017). "Reasonable suspicion is 'a particularized and objective basis for suspecting the particular person stopped of breaking the law.'" *Id.* (quoting *Heien v. North Carolina*, 135 S. Ct. 530, 536, (2014)).

Under Nebraska law, it is unlawful for a driver of a motor vehicle to "follow another vehicle more closely than is reasonable and prudent." Neb. Rev. Stat. § 60-6,140(1). Brabec testified that he uses a "three-second rule" to determine whether a driver is following at an unsafe distance and that he observed Defendant following a motor vehicle at a timed distance of .8 seconds. Tr. 14. Brabec explained that he uses the "three-second rule" that comes from the National Highway Transportation and Safety Administration guidelines. Tr. 6. The Eighth Circuit has recognized that under Nebraska law, a "two-second rule . . . is a 'widely used rule of thumb that accounts for the speed of traffic' and is an appropriate measurement of whether a trailing car is maintaining a reasonable and prudent distance." *United States v. Lopez*, 564 F.3d 1001, 1003 (8th Cir. 2009) (quoting *United States v. Andrews*, 454 F.3d 919, 921 (8th Cir. 2006)). The entirety of Defendant's argument is that "Brabec's front facing video clearly shows Defendant was

5

driving in a reasonable and prudent manner and not following too close." Df. Br., ECF No. 59, Page ID 151. Contrary to Defendant's conclusory assertion, the video of the stop supports Brabec's testimony. Accordingly, the Magistrate Judge reasonably concluded that Brabec had reasonable suspicion to conduct the traffic stop.

## II. Reasonable Diligence Completing the Stop

The reasonableness of the length of a traffic stop and a resulting detention are fact-based questions, and a traffic stop is not subject to a defined limit. *United States v. Riley,* 684 F.3d 758, 765 (8th Cir. 2012). "After a law enforcement officer initiates a traffic stop, the officer 'may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation.'" *United States v. Englehart*, 811 F.3d 1034, 1040 (8th Cir. 2016) (quoting *United States v. Quintero-Felix*, 714 F.3d 563, 567 (8th Cir. 2013)). These tasks may involve "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015). "If an officer can complete traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete [the stop's] mission.'" *Id.* at 1616 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). "[A] traffic stop 'prolonged beyond' that point is 'unlawful.'" *Id.* (quoting *Caballes*, 543 U.S. at 407).

The Fourth Amendment permits an officer to conduct an investigation unrelated to the reasons for the traffic stop as long as it "[does] not lengthen the roadside detention." *Id.* at 1614. For instance, during the course of a traffic stop law enforcement may question a vehicle's occupants on topics unrelated to the traffic infraction, *see Arizona v. Johnson*,

6

555 U.S. 323, 333 (2009), or perform a dog sniff around the outside of a vehicle, *see Caballes*, 543 U.S. at 409, as long as the police do not extend an otherwise-completed traffic stop to conduct these unrelated investigations, *Rodriguez*, 135 S.Ct. at 1614. A traffic stop becomes unlawful when it is prolonged beyond the point at which "tasks tied to the traffic infraction are—or reasonably should have been—completed," even if only for a de minimis time. *Id.* at 1614, 1615–16.

Here, the dog sniff occurred before the purpose of the stop was accomplished. The video of the stop demonstrates that the K-9 alerted to the presence of narcotics approximately ten minutes and twenty seconds after Brabec initiated the stop. No evidence suggests that Brabec unnecessarily prolonged the stop to allow Vance to run the K-9 around Defendant's vehicle. During the first ten minutes of the stop, Brabec did not ask unlawful or unduly interrogative questions. He asked about Defendant's itinerary and ownership of the vehicle. He also attempted to verify Defendant's identity. Each of these questions is permissible and within the scope of a traffic stop. The stop was prolonged, if at all, not by Brabec's questioning, but by the language barrier and Defendant's inability to provide a valid driver's license or an address. The K-9 sniff occurred within the time needed to accomplish the objective of the stop.

Defendant claims that this case is like *United States v. Peralez*, 526 F.3d 1115, 1119-20 (8th Cir. 2008), where a traffic stop was illegally prolonged "because of the trooper's drug interdiction questioning, not because of anything related to the investigation or processing of the traffic violation." Defendant argues that Brabec's "multitude of non-traffic and non-vehicle ownership questions were designed to prolong the stop." Df. Br., ECF No. 59, Page ID 153. However, "a reasonable investigation of a

7

traffic stop may include . . . requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose" of the trip. *United States v. Ramos*, 42 F.3d 1160, 1163 (8th Cir. 1994) (citing *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir. 1993). Unlike the trooper in *Peralez*, delays in this case, if any, were not caused by Brabec's interdiction questioning, but by Defendant's inability to provide an address or a valid driver's license. Accordingly, the dog sniff occurred while Brabec was still attempting to process the traffic violation.

### III. Probable Cause to Search the Vehicle

A court may presume probable cause to search "when a well-trained dog gives an alert." *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015) (citing *Fla. v. Harris*, 568 U.S. 237, 247 (2013)); *see also United States v. Jackson*, 811 F.3d 1049, 1052 (8th Cir. 2016) ("The positive alert by a reliable dog alone established probable cause."). It is Defendant's burden to overcome this presumption. *See id*. Defendant has not challenged the K-9's qualifications or the sufficiency of the K-9's alert. Defendant only argues that Brabec unreasonably prolonged the stop to permit the K-9 to sniff the vehicle. Because the Court concludes that the stop was not unreasonably prolonged and that the sniff occurred before the objective of the stop had been met, the Court may presume that the K-9's alert provided probable cause sufficient to search the vehicle. Because Brabec had probable cause, he did not need Defendant's consent to search the vehicle.

### IV. Defendant's Miranda Rights

The Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way." *Oregon v. Mathiason*, 429 U.S.

492, 494 (1977). The Supreme Court also has held that roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute "custodial interrogation" for purposes of the *Miranda* rule. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). Officers may question a vehicle's occupants on topics unrelated to the traffic infraction so long as those questions do not measurably extend the duration of the stop. *See Johnson*, 555 U.S. at 333; *see also United States v. Rodriguez-Arreola*, 270 F.3d 611, 617 (8th Cir. 2001) ("[A]n officer with reasonable suspicion to detain an individual in order to ask 'a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.'") (quoting *Berkemer*, 468 U.S. at 439).

As noted above, Brabec did not violate the Fourth Amendment by requesting that Defendant sit in the cruiser while Brabec carried out the purpose of the stop. Further, Brabec's questions to Defendant were permissible and did not unnecessarily prolong the purpose of the stop. Law enforcement did not ask any incriminating questions until after the K-9 alerted to the presence of narcotics in Defendant's vehicle. These questions were aimed at confirming or dispelling the officers' suspicions. The Court agrees with the Magistrate Judge's conclusion that Brabec was not required to given *Miranda* warnings to the Defendant at any time before they were actually given.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

IT IS ORDERED:

9

1. The Findings and Recommendation, ECF No. 78, are adopted in their entirety;

2. The Motion to Suppress filed by the Defendant Omar Rodriguez Lopez, ECF No. 58, is denied; and

3. The Objection to the Findings and Recommendation, ECF No. 79, is overruled.

Dated this 19th day of December, 2018.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge